## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IAN B. CORBIN, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 22-CV-3016** |
| | : | |
| KYLE FRENCH, *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**GALLAGHER, J.**                                              **NOVEMBER  28, 2022**

Plaintiff Ian B. Corbin, a convicted prisoner currently incarcerated at the Lehigh County Jail, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from his arrest and prosecution on drug charges.  Currently before the Court are Corbin's Complaint ("Compl.") (ECF No. 2) and his Amended Complaint ("Am. Compl.") (ECF No. 6).[1]  Corbin asserts claims against the following

---

[1] Corbin was previously granted leave to proceed *in forma pauperis*.  (*See* ECF No. 7.)  Corbin filed an Amended Complaint seeking to add claims against the Defendants named in the original Complaint.  (See ECF No. 6.)  The Amended Complaint does not include any factual allegations, but only identifies additional legal claims Corbin seeks to assert against the Defendants.  (*See id.*)  In general, an amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint.") (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

Moreover, the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant.  *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'") (quoting *Uribe*

Defendants:  (1) the Commonwealth of Pennsylvania; (2) Lehigh County; (3) the City of Allentown; (4) the Lehigh County Court of Common Pleas; Lehigh County Common Pleas Court judges (5) Douglas Reichley and (6) Maria Dantos; (7) Lehigh County District Attorney James Martin; (8) Lehigh County Assistant District Attorney Joseph Stauffer; and Allentown Police Officers (9) Andrew Holveck and (10) Kyle French.  (*Id.* at 2-3.)  Reichley, Dantos, Martin, Stauffer, and Police Officers Holveck and French are named in their official and individual capacities.  For the following reasons, Corbin's claims against the Commonwealth of Pennsylvania, the Lehigh County Court of Common Pleas and individual Defendants Dantos, Reichley, Stauffer, and Martin will be dismissed with prejudice.  His official capacity claims and his claims asserting violations of the Thirteenth Amendment, 42 U.S.C. §§ 1981, 1987, 1988, and 1994, and federal and state criminal statutes will also be dismissed with prejudice.  Corbin's claims against the City of Allentown and Lehigh County will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will abstain from addressing the remainder of Corbin's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.

---

*v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

     Corbin's Amended Complaint does not include any facts, only conclusory legal assertions.  As such, it would be subject to dismissal were it deemed the operative pleading.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'") (citation omitted).  It is unlikely that Corbin understood the consequences of filing his Amended Complaint.  In the interests of judicial economy, the Court will consider Corbin's Amended Complaint to be a supplement to his original Complaint and screen the filings together.

I.      **PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**[2]

On December 3, 2021, Corbin was convicted on drug charges stemming from an October 8, 2019 arrest.  *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh).  The public docket reflects that Corbin appealed his conviction and is currently awaiting a decision from the Pennsylvania Superior Court.  *Id.*  The docket further reflects that Corbin has been denied bail pending appeal.  *Id.*  The gravamen of Corbin's Complaint is that the arrest giving rise to the charges against him was conducted in violation of his Fourth Amendment rights, and that his continued efforts to obtain release on this basis have been thwarted by the concerted efforts of the Defendants.  He claims that, as a result, he has been wrongly convicted and incarcerated. (*See* Compl.)

Corbin alleges that on October 8, 2019, while walking home, he was detained by Defendant French, who seized Corbin's wrist and accused Corbin of having a dispute with his girlfriend involving a knife.  (*Id.* at 4.)  French conducted a search of Corbin but found no knife. Defendant Holveck arrived at the scene and handcuffed Corbin, whereupon Defendant French conducted a further body search, which revealed a small bulge in Corbin's pocket.  Defendant French reached into Corbin's pocket and removed a black latex glove, opened the glove, and found a substance that he suspected to be narcotics.  (*Id.* at 4-5.)  Defendant French is alleged to have conducted this search without a warrant or probable cause, and absent exigent circumstances.  (*Id.* at 5.)

---

[2] The allegations set forth in this Memorandum are taken from Corbin's Complaint and his Amended Complaint (ECF Nos. 2, 6.).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Additionally, the Court includes facts reflected in the publicly available state court docket, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Upon discovery of the alleged narcotics, Defendant French removed Corbin to the rear of his patrol car and directed Defendant Holveck to investigate the alleged domestic disturbance that precipitated Corbin's detention.  (*Id.*)  French assured Corbin that he was not under arrest, merely detained pending an investigation of the domestic disturbance.  (*Id.*)  Defendant Holveck proceeded to the domestic complainant's location, where he is alleged to have made defamatory remarks about Corbin, allegedly intended to encourage the complainant to provide an incriminating statement.[3]  (*Id.* at 6.)  Defendants French and Holveck allegedly agreed that Defendant Holveck would obtain a statement from the complainant to support Defendant French's arrest of Corbin on domestic disturbance charges, intending to support the additional drug charges, which would otherwise be based solely on the evidence obtained as a result of the allegedly illegal search.  (*Id.*)  Corbin alleges that the events surrounding his arrest were recorded on body cameras worn by Defendants French and Holveck, and that the footage establishes that the search was performed without probable cause and exceeded the scope of a "Terry search." (*Id.*)

Corbin was arrested and charged with one count of possession with intent to deliver, two counts of possession of a controlled substance, and one count of making terroristic threats.  (*Id.*)  Following arraignment, he was detained in the Lehigh County Jail in lieu of $25,000 bail.  (*Id.* at 7.)  On October 10, 2019, Corbin posted bail and was released.  However, he alleges that, as a result of the October 8, 2019 arrest, his bail in an unrelated matter was revoked by Defendant Dantos.[4]  (*Id.*)

---

[3] Holveck is alleged to have remarked to the complainant, "I know that guy.  He's a drug dealer," "He's a bit of a mama's boy.  His mother's a bit of a hard case, too," and "He's going to jail.  We found drugs on him."  (*Id.* at 5.)

[4] The publicly available docket in *Commonwealth v. Corbin*, No. CP-39-CR-3456-2019 (C.P. Lehigh) confirms that, on October 10, 2019, Corbin's bail was revoked in an unrelated criminal

Prior to Corbin's December 4, 2019 preliminary hearing, Defendant Stauffer, the Assistant District Attorney representing the Commonwealth in Corbin's case, withdrew the terroristic threats charge; the drug-related charges were bound over for trial. (*Id.*) On January 16, 2020, Corbin was formally arraigned. (*Id.*) The criminal information was signed by Defendant Martin as District Attorney and the presiding judge at the arraignment was Defendant Dantos. (*Id.*)

Corbin alleges that in the course of his criminal proceedings, he unsuccessfully attempted on numerous occasions to expose the illegal nature of the search that resulted in the charges against him. (*Id.* at 8.) On March 24, 2020, following a hearing at which footage from the body cameras worn by Defendants Holveck and French were introduced into evidence, Defendant Dantos denied Corbin's motion to suppress evidence and dismiss the charges against him notwithstanding her knowledge that the footage proved the search to be illegal. (*Id.*) Similarly, on May 25, 2021, following a hearing at which the footage from the body cameras was again introduced into evidence, Defendant Reichley denied Corbin's motion to suppress evidence and dismiss all charges against him for lack of probable cause notwithstanding his knowledge that the footage proved the search to be illegal. (*Id.* at 9.) Corbin contends that the footage played at both hearings clearly reflected the illegal nature of the search giving rise to the clams against him, and that the denial of his motions to suppress the resulting evidence and to dismiss the charges against him constituted concealment of the misconduct that occurred as part of a concerted effort by all Defendants to advance and protect their own interests. (*Id.* at 8, 9.)

Corbin's criminal trial commenced on December 3, 2021. (*Id.* at 10.) Corbin alleges that during the course of the trial, Defendant Reichley, who presided, insinuated to the jury that he

---

case arising from an August 1, 2019 arrest on drug charges. Defendant Dantos is identified as the presiding judge. (*Id.*)

had found the search conducted by Holveck and French to be permissible, thereby strengthening

Defendant Stauffer's position, and that Defendant Stauffer intimidated a witness for the defense

without reprimand by Defendant Reichley, to Corbin's detriment. (*Id.*) Corbin was found guilty

on all charges. (*Id.*) On February 14, 2022, Corbin was sentenced to a term of imprisonment of

66 to 144 months. (*Id.* at 11.) Corbin's appeal of his conviction remains pending. *See*

*Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh).

In short, Corbin alleges that all of the named Defendants, individually and in concert,

have acted illegally to obtain evidence that resulted in the charges against him, and have further

acted to conceal the illegal nature of the search, the resulting inadmissibility of the evidence, and

the lack of probable cause supporting the charges upon which he was convicted. As a result, he

has been prosecuted, incarcerated, suffered damage to his finances and reputation, and

experienced mental anguish and emotional distress. (*Id.* at 10-11.) Based on the foregoing,

Corbin asserts claims pursuant to 42 U.S.C. § 1983 based on violations of his Fourth, Fifth,

Sixth, Eighth, Thirteenth,[5] and Fourteenth Amendment rights. Corbin also alleges violations of

---

[5] The Thirteenth Amendment prohibits involuntary servitude, except as punishment for a crime for which a party has been duly convicted. U.S. Const. amend. XIII.; *United States v. Kozminski*, 487 U.S. 931, 943 (1987). In the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work. *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (nonprecedential) (inmate's Thirteenth Amendment and due process rights not violated when he was required to work for payment below minimum wage); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) ("A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted."); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (same).

In the context of a pretrial detainee, the Third Circuit has held that such prisoners may be compelled to perform only certain services. *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) (holding that, while a pretrial detainee could be compelled to perform "some service" in the prison, such as "general housekeeping responsibilities" consistent with the Due Process Clause, dismissal of complaint before service was premature where inmate, who was held for a

several federal statutes, including 42 U.S.C. §§ 1981, 1985, 1986, 1987, 1988, and 1994.[6]

(Compl. at 1.)  He also asserts violations of unidentified federal and state criminal statutes,[7] the

---

time as a pretrial detainee, alleged that he was required to work in the prison cafeteria in violation of the Thirteenth Amendment.

Although Corbin refers to "involuntary servitude" and "peonage" throughout his Complaint, and asserts violations of his Thirteenth Amendment rights, he does not include factual allegations in his Complaint that he was compelled to work as a detainee or that otherwise appear to relate to a Thirteenth Amendment violation.  (*See* Compl.)  Thus, whether his claim relates to the time he was a pretrial detainee or a convicted prisoner, his allegations fail to set forth a plausible claim under the Thirteenth Amendment based on involuntary servitude.  This claim will be dismissed.

[6] 42 U.S.C § 1981 prohibits racial discrimination in contracts.  Corbin does not include any allegations suggesting that any contractual relations exist among the parties.  Thus, it does not appear that § 1981 is applicable.  42 U.S.C § 1987 does not give rise to a private cause of action.  *See Wolfe v. Beard*, No. 10-2566, 2010 WL 5173199, at *12 (E.D. Pa. Dec. 9, 2010) ("Section 1987 empowers federal officials to prosecute violations of certain statutorily enumerated crimes. . . . [Section] 1987 does not provide a private right of action.") (citations omitted).  42 U.S.C § 1988, which provides for an award of attorneys' fees in certain circumstances, does not provide a basis for an independent right of action.  *See Vecchia v. Town of Hempstead*, 927 F.Supp 579, 580-81 (E.D.N.Y 1996) (citing *North Carolina Dep't of Transp. v. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 14 (1986)).  42 U.S.C. § 1944 prohibits peonage and fails for the same reason as his Thirteenth Amendment claim.  *See e.g., Amnesty America v. County of Allegheny*, 822 F.Supp. 297, 300 (W.D. Pa. 1993) (construing and disposing of claims under Thirteenth Amendment and § 1944 together).  These claims will be dismissed.

[7] The allegation that criminal statutes were violated is conclusory and not plausible for this reason alone.  Moreover, criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 9, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), aff'd, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*); *Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x 146, 147 (3d Cir. 2019) (*per curiam*) ("Brown's mere citation to various constitutional provisions cannot transform his state law claims into causes of action 'arising under' the Constitution.").  Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action.  *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").  The fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person.  *Touche Ross & Co. v. Redington*, 442 U.S.

Pennsylvania Constitution,[8] 28 U.S.C. § 453,[9] and the Rules of Professional Conduct governing

attorneys and the Pennsylvania Judicial Code of Conduct.[10]  (*Id.*)  He also includes a claim for

malicious prosecution against Defendant Stauffer.  (Am. Compl. at 1.)

Corbin requests a preliminary injunction in the form of an award of money and an Order

from this Court assist him in obtaining materials from the underlying criminal proceedings, a

declaratory judgment as to all suitable matters, and an award of compensatory and punitive

damages.  (Compl. at 23.)  He also requests the criminal prosecution of Defendants French,

Holveck, Stauffer, Dantos, and Reichley.[11]  (*Id.* at 13, 14, 17, 19, 20.)

---

560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).  These claims will
be dismissed.

[8] There is no private right of action for damages under the Pennsylvania Constitution, therefore
these claims are dismissed.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019)
("[N]or is there a private right of action for damages under the Pennsylvania Constitution");
*Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir.
2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a
private cause of action for damages under the Pennsylvania Constitution.").

[9] 42 U.S.C. 453, which requires federal judges to swear an oath of allegiance to the Constitution,
is inapplicable in this case, and does not, in any event, create a substantive cause of action for
violation of the required oath.  *Lewis v. Green*, 629 F. Supp. 546, 554 n.14 (D.D.C. 1986).  This
claim will be dismissed.

[10] "Violation of the Rules of Professional Conduct does not, without more, mean the conduct is
actionable or otherwise give rise to a cause of action against a lawyer."  *Deitrick v. Costa*, No.
06-1556, 2015 WL 1605700, at *17 (M.D. Pa. Apr. 9, 2015 (citing *Maritrans GP, Inc. v. Pepper,
Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992).  In any event, both the Rules of
Professional Conduct and the Pennsylvania Judicial Code of Conduct implicate state law and do
not give rise to a federal civil rights claim.  *Accord Canton v. Harris*, 489 U.S. 378, 387 (1989)
(holding that state law negligence allegation cannot form basis of 1983 liability).  These claims
will be dismissed.

[11] "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of
another."  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks
standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened
with prosecution") (citations omitted).  Moreover, "it is well-settled that the decision whether to
file criminal charges against an individual lies within the prosecutor's discretion, and private
citizens do not have a constitutional right to compel criminal prosecution."  *Lewis v. Jindal*, 368
F. App'x 613, 614 (5th Cir. 2010) (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL

## II.    STANDARD OF REVIEW

Corbin was previously granted leave to proceed in forma pauperis, and his Complaint, as supplemented by his Amended Complaint are now subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  That provision of the Prison Litigation Reform Act requires the Court to dismiss the supplemented Complaint if it fails to state a claim.[12]  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*, 184 F.3d at 240, which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Corbin is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").  Because Corbin's request that the named Defendants be prosecuted is not relief this Court can grant under § 1983 for civil rights violations, the claim will be dismissed.

[12] Because he is a prisoner, the PLRA requires Corbin to pay the full amount of the filing fee in installments regardless of the outcome of this case.

III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the

alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988);

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*,

845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution").

A.    **Claims for Injunctive and Declaratory Relief**

In his prayer for relief, Corbin requests injunctive relief in the form of an immediate

monetary award intended to begin to address his injuries pending the outcome of this litigation,

the intervention of this Court to assist Corbin in obtaining materials used in the prosecution of

the underlying criminal case, and a declaratory judgment in his favor as to all suitable matters.

(Compl. at 23.)

1.    **Injunctive Relief**

Corbin's request for money damages does not support a request for an injunction.  "A

plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*,

555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019).  If the

request for injunctive relief centers on the ownership of money, any injury cannot plausibly be deemed to be irreparable.  Corbin's request for an injunction awarding him immediate money damages must be dismissed.  *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013) ("Irreparable harm is injury that cannot adequately be compensated by monetary damages.").

Corbin's request for the Court's intervention to assist him in obtaining documents from the underlying criminal proceedings does not allege why he requires immediate access to the materials described, but the Court broadly construes the request as relating to Corbin's efforts to challenge the underlying criminal proceedings.  However, in *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  *Younger* requires this Court to abstain from considering this request.[13]

### 2.    Declaratory Relief

Corbin does not identify the nature of the declaratory relief that he seeks, but construing his allegations liberally, he appears to seek a declaration that the conduct of the Defendants violated his constitutional rights.  This request for relief is improper and will be dismissed with prejudice.  Declaratory relief is unavailable to adjudicate past conduct.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the

---

[13] The Court addresses the impact of Younger and why it requires abstaining from considering other claims asserted in Corbin's Complaint in more detail below.  *See infra*, Section III.H.

11

parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

### B.    Official Capacity Claims and Claims Against the City of Allentown and Lehigh County

#### 1.    Official Capacity Claims

Corbin alleges official capacity claims against all of the named individual Defendants. Claims against the individual Defendants named in their official capacity are indistinguishable from claims against their employing entity, here allegedly the City of Allentown or Lehigh County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Therefore, to the extent these Defendants are sued in their official capacities, any such claims are dismissed with prejudice as duplicative of the claims against the City of Allentown and Lehigh County. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### 2.     Municipal Liability Claims

To plead a basis for liability against a municipal entity such as the City of Allentown or Lehigh County under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers

know that employees will confront a particular situation, (2) the situation involves a difficult

choice or a history of employees mishandling, and (3) the wrong choice by an employee will

frequently cause deprivation of constitutional rights."  *Id.*

> As the United States Court of Appeals recently stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is
> here), the plaintiff must show that this failure "amounts to 'deliberate
> indifference' to the rights of persons with whom [the municipality's] employees
> will come into contact."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir.
> 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)).
> "Ordinarily," this requires a plaintiff to identify a "'pattern of similar
> constitutional violations by untrained employees'" that "puts municipal
> decisionmakers on notice that a new program is necessary."  *Id.* at 223 (quoting
> *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to
> show that failure to provide the identified training would "likely . . . result in the
> violation of constitutional rights" — i.e., to show that "the need for more or
> different training [was] so obvious."  *City of Canton v. Harris*, 489 U.S. 378, 390
> (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

With respect to his claims against the City of Allentown, Corbin's allegations fall into the

failure to train category.  He alleges that the City of Allentown failed to train its officers as to the

limits of a "Terry search."  (Compl. at 16.)  Additionally, the City is alleged to have failed to

train its officers to employ new procedures in light of the passage of the Medical Marijuana Act,

specifically, failing to instruct them that suspicion of possession of marijuana cannot provide

probable cause for a search that would otherwise violate the Fourth Amendment.  *(Id.)*  The City

is also alleged to have failed to train its officers in the avoidance of slander, defamation and

derogatory utterances during an investigation, and the inclusion of illegally obtained evidence in

a criminal proceeding.  (*Id.*)  Corbin also alleges that the City failed to supervise and discipline

its officers, particularly in view of the availability of body camera footage.  (*Id.*)  These

allegations do not state a plausible municipal liability claims against the City, however, because

Corbin does not allege a factual pattern of similar constitutional violations by other officers, or

facts that would support a plausible conclusion that the City was on notice that a new program

was necessary, nor does he allege that the need for more or different training [was] so obvious

that the City should have recognized it.  *See Johnson*, 975 F.3d at 403 (quotations omitted).  As a

result, his claim against the City of Allentown is not plausible and will be dismissed.

        With respect to his claims against Lehigh County, Corbin alleges that the County is liable

for the acts of employees of the City of Allentown.  He also alleges that the County failed to

supervise, control, and discipline its own representatives – presumably the Allentown police

officers since Stauffer and Martin are employed by the Lehigh County District Attorney's Office

and Dantos and Reichley are employed by the Lehigh County Court of Common Pleas - in that it

did not have in place an effective checks and balances system implemented to prevent conspiracy

and internal corruption by individuals who acted under the belief that their conduct was protected

by immunity principles.  (Compl. at 21.)  Corbin also claims that the County secured a pecuniary

benefit by pursuing criminal proceedings against him employing unjust and corrupt acts.  (*Id.*)

Corbin alleges that he has provided notice to the County of the foregoing defective conditions.

(*Id.*)

        Although located in Lehigh County, Allentown is a political subdivision of Pennsylvania,

not of Lehigh County.  *See Hall v. Weaver*, No. 10-101, 2011 WL 1136838, at *1 n.1 (W.D. Pa.

Mar. 8, 2011), *report and recommendation adopted*, 2011 WL 1114248 (W.D. Pa. Mar. 25,

2011) (stating that municipalities located in Allegheny County were not political subdivisions of

Allegheny County, but rather were political subdivisions of the Commonwealth).  Accordingly,

any assertions of liability against Lehigh County based on the actions of Allentown employees is

not plausible.  Claims against Lehigh County based on the actions of Stauffer and Martin are also

not plausible.  As prosecutors, Stauffer and Martin are employed by the Lehigh County District

Attorney's Office and the United States Court of Appeals for the Third Circuit has held that

district attorneys' offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of 1983 liability").  As judges, Reichley and Dantos are employees of the Commonwealth.  Thus, their actions also cannot be attributable to Lehigh County and Corbin's claim against Lehigh County will be dismissed with prejudice.

### C.      Claims Against the Commonwealth of Pennsylvania

Corbin asserts claims against the Commonwealth of Pennsylvania for deprivation of his rights, conspiracy to interfere with his civil rights, and neglect to prevent conspiracy to interfere with his civil rights; peonage, and involuntary servitude for which he requests an award of money damages.  (Compl. at 22; Am. Compl. at 2.)  However, states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages that Corbin seeks to assert against the Commonwealth of Pennsylvania are dismissed with prejudice.

### D.      Claims Against the Lehigh County Court of Common Pleas

Corbin asserts a claim for conspiracy to interfere with civil rights against the Lehigh County Court of Common Pleas and requests an award of money damages.  (Compl. at 20.)  He also asserts official capacity claims against Judges Dantos and Reichley, who are employees of the Lehigh County Court of Common Pleas.  The Lehigh County Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Corbin's claims against the Lehigh County Court of Common Pleas and his official capacity claims against Dantos and Reichley are barred by the Eleventh Amendment.

### E.    Claims Against Judges Reichley and Dantos

Corbin asserts individual capacity claims against Defendant Dantos based on her denial of a motion to suppress evidence and dismiss all charges against Corbin in the criminal action at issue in this case and her revocation of his bail in an unrelated case pending before her.  (Compl. at 7, 8, 18.)  He asserts claims against Defendant Reichley based on his denial of Corbin's motion to suppress evidence and dismiss all charges against Corbin in the criminal action at issue in this case, his insinuation to the jury during trial that the search conducted by Holveck and French was permissible, his imposition of a sentence upon Corbin following his conviction on all charges, and his revocation of Corbin's bail pending appeal.  (*Id.* at 9, 10, 11, 13, 19.)  Corbin asserts claims against both judges for deprivation of his Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights, conspiracy to interfere with his civil rights, neglect to prevent the conspiracy to interfere with his civil rights, unlawful restraint, false imprisonment, official oppression, obstruction of justice, peonage, involuntary servitude, and violations of the Pennsylvania Constitution.  (*Id.* at 18, 19; Am. Compl. at 1.)  He seeks an award of money damages and criminal prosecution of both Defendants.  (Compl. at 19, 20.)

Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).

Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Corbin concedes that the Defendants were acting in the course and scope of their judicial duties when they engaged in the described conduct.  Indeed, the conduct described is undeniably judicial in nature.  Moreover, there is no suggestion that either Defendant acted in the complete absence of all jurisdiction.  Because entertaining and resolving motions, decisions regarding bail, and presiding over trials are functions normally performed by a judge, they enjoy absolute immunity for claims based on that conduct.  Accordingly, Corbin's claims against them must be dismissed with prejudice.

**F.      Claims Against District Attorney Martin and Assistant District Attorney Stauffer**

Corbin asserts claims against District Attorney Martin and Assistant District Attorney Stauffer based on their representation of the Commonwealth in the criminal proceedings against Corbin.  He alleges that Defendant Stauffer (who prosecuted the case) was in possession of all of the evidence necessary to correct the errors committed in the course of Corbin's criminal proceedings, was aware that the charges against Corbin were not supported by probable cause, was present for all events throughout the underlying criminal proceedings, and that he at all times acted within the course and scope of his duties in prosecuting Corbin[14].  (Compl. at 17.) Defendant Martin allegedly signed and approved the criminal information that formed the basis of the prosecution.  (*Id.* at 7, 18.)

---

[14] Corbin asserts claims against Defendant Stauffer for violations of his Fourth, Eighth, Thirteenth and Fourteenth Amendment rights, conspiracy to interfere with civil rights, neglect to prevent conspiracy to interfere with civil rights, malicious prosecution, official oppression, tampering with a witness, involuntary servitude, and peonage.  (*Id.*; Am. Compl. at 1.)  Corbin's malicious prosecution claim will be addressed separately, *infra*.

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Because all of the conduct alleged to have been engaged in by these Defendants occurred in the course of their representation of the Commonwealth in Corbin's criminal proceedings, they are entitled to absolute immunity and the claims against them must be dismissed with prejudice.

## G.      Malicious Prosecution Claim

Corbin asserts a malicious prosecution claim against Defendant Stauffer. (Am. Compl. at 1.) To allege a plausible malicious prosecution claim under section 1983, a plaintiff must assert facts that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

Corbin's claim is not presently cognizable in a civil rights action because he has not alleged that the criminal proceedings have terminated in his favor. Rather, he alleges that he was convicted, and that his conviction is currently awaiting a decision by the Pennsylvania Superior Court. *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh). Accordingly, Corbin cannot state a claim for malicious prosecution at this time. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages [or other relief] for allegedly unconstitutional

conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]").  Accordingly, the Court will dismiss Corbin's malicious prosecution claim without prejudice so that he is not precluded from reasserting it if his conviction is overturned or otherwise terminates in his favor on appeal.  In that event, Corbin may file a new case raising this claim

### H.     Individual Capacity Claims Against Officers Holveck and French

Corbin alleges that the conduct engaged in by Defendants Holveck and French, violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because these Defendants conducted an illegal search without probable cause, conspired to achieve Corbin's arrest without probable cause, and failed to disclose the absence of probable cause supporting the charges against Corbin throughout the criminal proceedings.  (Compl. at 14-15; Am. Compl. at 1.)  In *Younger*, 401 U.S. 37, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  "*Younger* abstention is only appropriate in three types of underlying state cases:  (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function."  *PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted).

*Younger* abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."  *Evans v. Court of Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).  Comity concerns are

especially heightened when the ongoing state governmental function is a criminal proceeding.
*Id.* The specific elements that warrant abstention are that "(1) there are ongoing state
proceedings that are judicial in nature; (2) the state proceedings implicate important state
interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."
*Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Exception to the *Younger* doctrine exist
where irreparable injury is "both great and immediate," where the state law is "flagrantly and
patently violative of express constitutional prohibitions," or where there is a showing of "bad
faith, harassment, or . . . other unusual circumstance that would call for equitable relief."
*Younger*, 401 U.S. at 46, 53-54. These exceptions are to be narrowly construed. *Hall v.
Pennsylvania*, No. 12-2373, 2012 WL 5987142, *2 (M.D. Pa. 2012) (citing *Loftus v. Twp. of
Lawrence Park*, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

The *Younger* requirements are clearly met in this case for the claims against Holveck and
French. First, the publicly available docket from the Court of Common Pleas of Lehigh County
reflects that Corbin appealed his conviction and is currently awaiting a decision by the
Pennsylvania Superior Court. Second, the state proceedings implicate the important interest of
enforcing the Commonwealth's criminal laws. Third, the appellate proceedings provide Corbin
an adequate opportunity to argue in the state forum that the alleged misconduct by Holveck and
French resulted in his arrest and prosecution in a manner that violates his constitutional rights.[15]
Further, there is nothing in the Complaint to indicate that Corbin's claims fall within any of the
narrow exceptions to the *Younger* doctrine. Accordingly, it is appropriate to abstain from
entertaining Corbin's remaining claims against Holveck and French out of deference to the state

---

[15] This Court may assume that the state procedures will afford Corbin an adequate remedy. *See
Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1
(1987)) ("Initially, we must presume that the state courts are able to protect the interests of the
federal plaintiff.").

judicial process.[16]  *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.") (citations omitted)); *see also Ellis v. Mondello*, Civ. A. No. 05-1492, 2005 WL 1703194, at *3 (D.N.J. 2005) ("[A]ssuming the criminal action is still pending in a state trial or appellate court, review of the state court proceedings would be barred; a district court cannot interfere in a pending state criminal action in order to consider issues that a plaintiff can raise there.").

## IV.    CONCLUSION

For the reasons stated, Corbin's claims against the Commonwealth of Pennsylvania, Lehigh County, the Lehigh County Court of Common Pleas and the individual and official capacity claims against Defendants Dantos, Reichley, Stauffer, and Martin, will be dismissed. Other than the malicious prosecution claim against Defendant Stauffer, the dismissal is with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The malicious prosecution claim is

---

[16]  Corbin asserts claims pursuant to 42 U.S.C. §§ 1985 and 1986 (*see* Compl. at 1).  Those claims are also subject to *Younger* abstention.  *See e.g.*, *Meador v. Paulson*, 385 F App'x 613 (8th Cir. 2010) (concluding that district court did not abuse its discretion in abstaining from resolving claims against a state prosecutor and state court judge pursuant to § 1985 under *Younger*); *Streater v. Paulson*, 217 F.3d 846 (9th Cir. 2000) (affirming district's application of *Younger* to state prisoner's claims under §§ 1985, 1986); *Brandy Found. Animal Sanctuary v. San Bernardino Cty.*, No. 08-02292, 2008 WL 11409512, at *3-*4 (C.D. Cal. June 20, 2008) (ordering a stay, on *Younger* abstention grounds, of the portions of the plaintiffs' § 1983 claims that concerned search and seizure, § 1985 conspiracy claims, and civil RICO claims, on the grounds that all of these claims were likely to interfere with ongoing criminal prosecutions).

dismissed without prejudice so that Corbin may raise it in a new civil action if his conviction is ever overturned or otherwise impugned.  His claims asserting violations of the Thirteenth Amendment, 42 U.S.C. §§ 1981, 1987, 1988, and 1994, and federal and state criminal statutes will also be dismissed with prejudice and with no leave granted to amend because amendment would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Corbin's claims against the City of Allentown will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will abstain from addressing the remainder of Corbin's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.  Corbin may move to reopen this action following the resolution of his pending appeal.  An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**